## Hodgen's Election

*Guy W. Davis*, for petitioners; *Thomas A. Curran*, contra.

BROOMALL, J., March 17, 1933.—In passing upon the above matter, the following essential facts are noted, as disclosed by the petition, answer, and testimony taken.

In the primary election held April 26, 1932, in the second ward of Aston Township, this county, the name of Mary K. Hodgen was the only name printed on the face of the voting machine as a candidate for Republican county committeewoman from said ward. Vera Buckley Simcox (maiden name Vera Buckley) was also a candidate for the same position, but in voting it was necessary to write in her name. When the votes were tabulated the result was as follows: Mary K. Hodgen, 37 votes in space printed on machine; Mary Hodgen, 1 vote written in; V. Simcox, 35 votes written in; V. Buckley, 6 votes written in; V. B., 1 vote written in.

A certificate of election was issued to Mary K. Hodgen, and a rule was allowed on petition to show cause why Vera Buckley Simcox should not be certified as the duly elected county committeewoman, and testimony was presented on behalf of the petitioners.

Counsel for both contestants and proponent concede this court has jurisdic-

tion in the matter, but presumably they mean jurisdiction to determine which of the two candidates was elected to the office of county committeewoman.

Section 1 of the Act of July 12, 1913, P. L. 719, as amended by the Act of May 18, 1917, P. L. 244 (25 PS § 1041), provides for the election of State and National committeemen and for filling vacancies, but no reference is made to county committeemen. In the historical note, 25 PS p. 222, referring to the Act of February 17, 1906, P. L. 36 (repealed), it is stated (paraphrasing Horan v. Blenk et al., 17 Dist. R. 363, 365) : "The legal status of party committees was not such as to give the courts jurisdiction over them, their duties being pre-scribed entirely by party rules, not of public interest or importance, and it has not been altered by this act." We find nothing under existing law which changes the situation. In Kearns et al. v. Howley et al., 188 Pa. 116, revers-ing the lower court, it was held: "A court of equity in Pennsylvania has no jurisdiction to restrain by injunction the chairman of a county committee of a political party from filling vacancies in violation of the rules of the party, where it appears that no property rights are involved." The court further said (p. 119) : "Howley probably filled the vacancies with the names of democrats personally agreeable to himself, and it is by no means incredible they accorded with him in his ambition to continue himself in office. . . . However this may be, if he usurped the power or wrongfully exercised it, he was amenable to his party, which could dethrone him and visit him with political penalties". And further (p. 122) : "The courts cannot step in to compose party wrangles, or to settle factional strife. If they attempt it, it may well be doubted whether they would have much time for anything else."

The courts, with the record clear and concise, could say whether a man should vote in the Republican or Democratic primaries, but that would not compel him to vote in either. Here we can say who was elected county committeewoman from the second ward of Aston Township, at the primaries held April 26, 1932, but it is the county committee as a whole which ultimately passes upon the mem-bership of such committee. In other words, a member of the county committee, although permitted to be voted for in the primaries in the same manner as other candidates, is not such a candidate as comes within the category of those whose nomination and election is particularly referred to by statute and who are a necessary part of the government of the State or political subdivision thereof and at all times amenable to the courts of the State. The duties of the latter are specifically defined; those of the county committeeman or committeewoman being merely a part of the party organization and naturally amenable to the county committee as a whole. The courts, however, never lose control of the ballot, and it is to that extent only we consider this petition.

From the testimony in the instant case it was established that Vera Buckley Simcox lived in the second ward of Aston Township all her life; that her maiden name was Vera Buckley; that no other person resides in that ward of the same or similar name; that Vera Simcox lived with her mother Mrs. Buckley; that she is generally known and referred to as both Vera Buckley (maiden name) and Vera Simcox and that she was known by either or both of these names to practically every voter in the ward, and that Vera Buckley and Vera Simcox are one and the same person, namely Vera Buckley Simcox.

It has not been brought to our attention, nor have we been able to find any case, where the same person was voted for under different names as in the instant case. There are a number of cases where the intention of the voter was apparent, but erroneously expressed through a slight mistake in spelling the last name, using initials (sometimes wrong) for the first name, without using the first name, and using a written name which was wrong but similar in pro-

nunciation; and in all such cases it has been held that where there was no other similar name in the district the intent of the voter was apparent, and the total vote should be combined, counted, and returned for the correct name of the person so intended to be voted for.

Two of the cases cited by counsel for proponent are not analogous to the instant case, in that while a variation in the name of the same person was used in voting they were not all under the same political heading and of course could not be joined as a total vote for that person for any particular party; and in Corydon Township Election, 13 D. & C. 518, where it was apparent one Garvin had received the most votes under three different designations of his name, the court refused to permit the names to be combined and counted for Garvin as the stickers used were scattered over the ballot and not always under the proper title of the office voted for.

In Hutchinson's Contested Election, 29 Dist. R. 840, the court permitted ballots bearing 12 different designations to be counted for David A. Hutchinson, excluding only one ballot each for "D. Hutch" and "Hutchine". In In re Recount of Votes, 64 Pitt. L. J. 106, it was shown that Oliver Mullen received 163 votes, Frank Seiss received 130 votes, and Frank Leiss 35 votes. Frank Seiss was the correct name, but the votes for Frank Leiss were held to be for Frank Seiss.

The votes as tabulated in the instant case show 38 votes for Mary K. Hodgen, and, omitting the vote for V. B., 41 votes for Vera Buckley Simcox, the 35 votes for V. Simcox and the 6 votes for V. Buckley all being intended for the same person, Vera Buckley Simcox.

And now, to wit, March 17, 1933, the certificate issued to Mary K. Hodgen as county committeewoman from the second ward of Aston Township is hereby declared null and void, and further ordered that, in lieu thereof a certificate be issued to Vera Buckley Simcox as the duly elected county committeewoman for said election district at the primaries held April 26, 1932.

From William R. Toal, Media, Pa.